## O'CONNOR v. UNITED STATES.
### No. 6543.

United States Court of Appeals
Fourth Circuit.

Argued March 19, 1953.

Decided April 7, 1953.

302

Robert J. Heberle, Richmond, Va., for appellant.

David E. Satterfield, III, Asst. U. S. Atty., Richmond, Va. (A. Carter Whitehead, U. S. Atty., Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal is taken from a judgment of the District Court in which Kenneth A. O'Connor was sentenced to serve three years in prison and to pay a fine of $20,000 for filing false and fraudulent income tax returns in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). The indictment in three counts related to the calendar years 1944, 1945 and 1946. It charged that the defendant falsely stated his net income to be $13,357.84 in 1944, $15,575.99 in 1945, and $25,-445.03 in 1946, whereas the actual net income for these years was $45,016.26, $44,173.34 and $128,337.87 respectively.

The trial was had before a jury during the period between October 13 and October 22, 1952 and nearly 100 witnesses on behalf of the United States were examined. There was substantial testimony to the effect that the defendant's income was derived chiefly from a coin machine and music machine business which he operated in five cities in Virginia, and that he was also interested in other enterprises and had extensive real estate holdings in Richmond. The witnesses for the United States included an accountant employed by the defendant at a salary of $20 to $25 per month to keep his accounts and make his tax returns; but the evidence showed that this employee was not required to keep a complete set of books and was not informed of all the taxpayer's transactions and business interests.

There was also specific evidence of large cash transactions of which there was no record on the books and evidence that the record of collections from the coin machines in Richmond did not include all of the machines of the defendant in that city. Hence it became necessary to compute the defendant's income by compiling a statement of his net worth at the beginning and end of each of the years in question and making the necessary adjustments. By this method, and in other ways, substantial proof in support of the charges set out in the indictment was furnished.

The pending appeal is confined to two points. First it is contended that the defendant did not have a fair trial because a jeopardy assessment was levied against his assets and his current income was impounded by the United States on August 8, 1952, so that he was denied the right to defend himself effectively. It is conceded by the United States that the jeopardy assessment was levied as alleged when it was learned that the defendant was disposing of some of his property, but it is pointed out that there is a total lack of evidence that the defense of the suit was in any way hampered by this circumstance.

The court records show that the indictment was found on October 2, 1950, 22

months prior to the levying of the assessment, during which period the defendant remained in full possession of his property. The case was first set for trial on April 8, 1952, but the trial was delayed by a motion of defendant's attorney requesting that he be examined by qualified physicians under the provisions of 18 U.S.C.A. § 4244 in order to ascertain whether he was mentally competent to stand trial. The motion was granted and the examination was had, but the physicians found no disability. Upon their report the District Judge ordered the trial to proceed, but the defendant took an appeal to this court which was heard in June, 1952, and dismissed as premature. No further attempt was made in the District Court or upon this appeal to show mental incapacity on the part of the defendant.

 It is manifest that during all of this long preliminary period the defendant had full opportunity to prepare his defense, as well as ample opportunity after the levying of the assessment to bring that circumstance to the attention of the court. But the present contention was not raised until the first day of the trial in the District Court and no offer was then or later made during the trial, nor has any offer been made in this court upon this appeal, to show that the defendant was embarrassed by the assessment in the preparation or trial of the case, or that he would or could have made any other defense than he did present, if the assessment had not been levied. As a matter of fact his own accountant was called as a government witness and he was free to bring out in cross examination any facts relative to his records that would be helpful to his case. He has been represented throughout by competent counsel skilled in matters pertaining to federal income taxes. There is no claim that the minds of the jury were in any way affected by the levying of the assessment. In effect, the present contention is that the mere levying of a jeopardy assessment against the property of a taxpayer is of itself sufficient to preclude the trial of an indictment against him upon charges of defrauding the United States. We do not think that the bringing of an indictment strips the government of the power to proceed under the provisions of Section 273 of the Internal Revenue Code, 26 U.S.C.A. § 273, by way of jeopardy assessment to restrain a delinquent taxpayer from the disposition of his property, or that the mere levying of such an assessment precludes the prosecution of such an indictment.

 The second contention is that the case should not have been submitted to the jury because the evidence which indicated an unaccounted for increase of net worth between January 1, 1944 and December 31, 1946 in the sum of $154,000 was based in part upon assets amounting to $164,000 jointly held in the names of the defendant and wife without allocation between them. There was, however, evidence tending to show that the property which appeared on the land records in the names of husband and wife had actually been purchased with the defendant's funds. The persons who negotiated the sales testified that they dealt with the defendant alone, and the settlement sheets made no reference to the wife but indicated that the properties were bought for the account of the defendant. Furthermore the defendant's income returns for the years 1944 to 1946 showed that his wife had no income during this period; and when he took the stand as a witness he made no claim that his wife had contributed to the purchase price. She herself was not produced as a witness. In view of this testimony it would have been error to direct a verdict for the defendant.

Affirmed.