### UNITED STATES of America
#### v.
### ALLIED STEVEDORING CORPORATION, John Ward, John Potter and Michael Bowers, Defendants.

United States District Court
S. D. New York.
Jan. 31, 1956.

**556**

Paul W. Williams, U. S. Atty., New York City, for the United States. Martin Carmichael, Jr., Asst. U. S. Atty., New York City, of counsel.

Thomas F. Burchill, Jr., Henry A. Lowenberg, New York City, for defendant Allied Stevedoring Corp.

IRVING R. KAUFMAN, District Judge.

On May 29, 1953, two months before defendants were indicted for a fraudulent attempt to evade corporate income taxes, a notice of federal tax liens was filed against the assets of Allied Stevedoring Corporation, hereinafter termed "the Corporation". Because of this lien, the Corporation avers by its president, John Ward, that it has been without funds to retain "accountants, lawyers and other personnel required to prepare its defense and to assist during the trial of the indictment", and that "counsel who have appeared on behalf of the corporation . . . have done so without receiving any compensation from the said corporation." · The Corporation contends that the government's refusal to release funds for it to retain such personnel amounts to a denial of due process in that the Corporation is being deprived of the effective assistance of counsel. It therefore moves to have the indictment against it dismissed, citing as authority for such a dismissal the decision in United States v. Brodson, D.C.E.D.Wis., 136 F.Supp. 158.[1]

1. The Corporation originally moved to have the Court order the release of $15,-000 of the impounded funds, but it made no attempt to show that the Court has power to make such an order. Instead, when it was pointed out during oral argu-

In the Brodson case, an individual defendant under indictment for tax evasion filed an affidavit (broad enough to lay the foundation for a later perjury indictment) in which he averred that he was totally without funds and unable to procure them because the government had placed tax liens upon all his property. The Court previously had appointed defense counsel to serve without compensation, but it held that because of the complex net worth questions involved in the action, effective assistance of counsel included the services of an accountant. The Court decided that it had no power to appoint an accountant to serve either without compensation or at government expense, and it also found itself powerless to order the levy released upon funds of the defendant sufficient to pay reasonable accounting fees. Characterizing the government's refusal to release funds as "holding and hitting", the Court held that defendant was being deprived of due process of law, and it dismissed the indictment.

Since the Brodson case dealt solely with the problem of needed accounting services, it certainly cannot support defendant's claim here that the levy has rendered it unable to pay reasonable attorneys' fees. If the Corporation is indigent, the Court can always appoint counsel, but here, no such request has been made, nor is one necessary because the Corporation is represented by two attorneys, at least one of whom has been compensated for his services, though not by the Corporation itself.[2] Neither of these attorneys has indicated that he intends to withdraw as defense counsel if this motion is denied. Indeed, the attorney who argued for the Corporation admitted that he would continue his representation even if the instant application were to be denied.[3]

Thus the question here is whether defendant Corporation is being denied the effective assistance of counsel contrary to due process of law because of its inability to hire an accountant. Assuming arguendo that the Brodson rationale is sound on this point, I find no such denial of due process to exist here.[4]

Although the Corporation has submitted an affidavit to the effect that it has

ment that Brodson denied the existence of such power, and this Court indicated agreement with that holding, cf. Tomlinson v. Poller, 5 Cir., 1955, 220 F.2d 308, 311–312, certiorari denied sub nom. Pace v. Tomlinson, 350 U.S. 832, 76 S. Ct. 66, rehearing denied 1955, 350 U.S. 905, 76 S.Ct. 177, the Corporation was permitted to seek the alternative relief of dismissal of the indictment. (Transcript of argument, pp. 5–6.) The question of the appropriateness of this latter relief has been the only question seriously pressed.

2. Transcript of argument, p. 4.

3. Transcript of argument p. 20.

4. While I agree with Judge Grubb's reasoning as to the necessity of accounting services as part of effective counsel in a complex tax fraud case, I am not completely persuaded that the only solution is dismissal of the indictment upon the government's failure to release the necessary funds. In reaching his conclusion, Judge Grubb indicated that he felt he could not provide defendant with an accountant by using his power to appoint an expert under Rule 28 of the Criminal Rules, 18 U.S.C.A. He stated that even if the government waived its right to be advised of the expert's findings, the language of the Rule requiring the expert to report his findings to both parties is mandatory, and the disbursing officer might validly refuse to pay any expert who did not so report, waiver notwithstanding. I do not believe this result would necessarily follow for I believe the Rules should be construed with the greatest liberality. In United States v. Cancellieri, D.C.E.D.N.Y.1946, 5 F.R.D. 313, 314, the Court used its power under Rule 28 to appoint an expert to investigate defendant's sanity after a verdict of guilty was rendered. The Court said the construction of these rules "should not be based upon hair-splitting technicalities. If these rules are construed in the spirit in which they were prepared, they will do much to aid in the proper administration of justice." Such reasoning might well be applicable here. However, there is room for argument that this Rule was not intended and should not be allowed to cover the appointment of experts needed by indigent defendants to aid *their* case as opposed to aiding the Court to reach a proper decision, although it

been without funds since the levy, no similar affidavits have been made by the officers of the Corporation, all three of whom are codefendants with the Corporation, this despite a request for such affidavits by the Court. It was pointed out during oral argument that to prove their innocence, the individuals would have a deep interest in establishing the innocence of the Corporation, as it is alleged that the Corporation acted through the three indicted officers. Or, to put it another way, the Corporation was the medium used by the individual officer defendants to accomplish their desired objective.[5] Indeed, counsel for the Corporation admitted that the Corporation would reap the benefit of any accounting services rendered to the individuals.[6]

█ At the argument, I pointed out that this Court could not order any of the defendants to file affidavits relating to their financial status, but it was made quite clear to counsel that I would consider this case to be far outside the scope of the Brodson decision unless adequate proof of lack of funds was forthcoming from both the Corporation and the individual defendants. Time was given to counsel to furnish such affidavits after agreement by counsel to do so. Despite this clear indication, however, the individual defendants have decided to refuse to submit any affidavits concerning their inability to pay counsel or accounting fees, and the inference is inescapable, therefore, that they can afford to pay for such services. Further support for this inference can be found in the fact that the two co-counsel for the Corporation each represent one or more of the individual defendants, and the Corporation's affidavit does not aver that these attorneys have received no compensation for their services; rather it states that *the Corporation* itself has not paid them.

We thus have a situation where two competent counsel are serving the Corporation, seemingly being compensated for their services by interested individuals, and these same two counsel are representing all the corporate officers, code-

---

might be urged in answer that in aiding either party, the Court is being aided in the search for truth. Since I feel the dilemma faced by Judge Grubb is not actually posed here, I shall discuss this case as if the Brodson decision is the law without deciding whether dismissal would be the only solution were I to find defendant to be without adequate counsel.

5. It is true that juries have in the past rendered inconsistent verdicts acquitting the individual defendant corporate officers while convicting the corporation and vice versa, and these verdicts have been allowed to stand. The rationale behind such affirmances was set forth by Judge Learned Hand in United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229, 233, certiorari denied 1929, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002. "If we were limited to a rational reconciliation, we might perhaps have to say that neither finding could stand . . . . But we are not so limited; the verdict in either case may have been the result of considerations not rational at all. With that possibility, so far as it touches the acquittal, we are not concerned, because the appellants have no vested right in the punishment of their fellows, however guilty. We need only consider whether there is any indication that the jury was improp-

erly moved to convict, and upon that question the acquittal throws no light whatever." His reasoning that the jury may have been irrational, but that such irrationality will not upset the verdict has been consistently followed. E. g., United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 411, certiorari denied 314 U.S. 618, 62 S.Ct. 105, 86 L. Ed. 497, rehearing denied 1941, 314 U.S. 710, 62 S.Ct. 178, 86 L.Ed. 566; United States v. Samuel Dunkel & Co., 2 Cir., 1950, 184 F.2d 894, 898, certiorari denied Samuel Dunkel v. United States, 1951, 340 U.S. 930, 71 S.Ct. 491, 95 L. Ed. 671; United States v. Hare, 7 Cir., 153 F.2d 816, 819, certiorari denied 1946, 328 U.S. 836, 66 S.Ct. 982, 90 L.Ed. 1612; cf. Pevely Dairy Co. v. United States, 8 Cir., 1949, 178 F.2d 363, 370–371, certiorari denied 1950, 339 U.S. 942, 70 S.Ct. 794, 94 L.Ed. 1358. The possibility that a jury may irrationally acquit one or more co-defendants while finding the others guilty does not, however, alter the fact that a rationally prepared defense of the officer defendants here must necessarily defend the Corporation, the alleged actual tax evader in this case, for the interests of each individual and the Corporation are mutual, not adverse.

6. Transcript of argument, p. 13.

fendants herein, none of whom is unable to pay for necessary accounting services. Were there any conflict in interest between the individual defendants and the Corporation, it must be presumed that counsel would not have accepted their dual roles and that the defendants would not have agreed to such an arrangement. If their interests are mutual and their defenses interwoven, any services provided by accountants to the individuals will redound to the benefit of the Corporation, and, since the same transactions are involved, these services will undoubtedly cover the necessary points.[7]

■ Despite these facts, the Corporation contends that it is an entity accused of crime and hence is entitled to make its own defense with its own accountants, else it is beng deprived of due process of law. The Corporation furnishes no judicial support for this contention, and I can find none. The efforts of corporations to use the entity theory to distort the actual realities of a situation have often been dealt with by the courts. In an often quoted decision, Judge Sanborn laid down the rule that, "a corporation will be looked upon as a legal entity as a general rule * * * but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." United States v. Milwaukee Refrigerator Transit Co., C.C.E.D.Wis. 1905, 142 F. 247, 255, approved in Bal-

lantine, Corporations, p. 293 (Rev.Ed. 1946). That rule finds practical application here.

Defendant has come into this Court requesting a drastic remedy; it requests that an indictment against it be dismissed because it has been denied the effective assistance of counsel. Yet, to use the traditional equity maxim, defendant does not come before the Court with clean hands. The unwillingness of the individual defendants to reveal their financial status or to state whether they have received accounting services or are in a position to avail themselves of such services, can lead me to no other conclusion than that they have urged counsel to bring this motion on behalf of the Corporation in order to coerce the release of corporate funds so that expenses which they would be required to incur in preparing their own defense will be assumed by the corporate entity. This conclusion is reinforced by the fact that in the two and a half years since the indictment and notice of lien were filed, the Corporation has never indicated to the Court that it has been financially hindered in preparing its case, cf. O'Connor v. United States, 4 Cir., 1953, 203 F.2d 301, and that even now, the Corporation has not shown that it has made any unsuccessful attempts to procure the necessary accounting services from organizations qualified to help indigent defendants.[8]

■ Due process of law is not an abstraction; it must be measured in con-

---

7. The mutuality of interest here, and the dual roles of counsel are further facts compelling the conclusion that the individual defendants have failed to file the requested financial statements because they are unable to swear that they are without funds.

8. The supplemental affidavit of the Assistant United States Attorney merits attention. He averred: "Following oral argument of the instant motion, through four phone calls three disinterested sources of assistance to an indigent defendant were ascertained: (1) An agency which, if assigned as counsel, would, as part of its duty to an indigent defendant, solicit funds to retain an accountant if necessary; (2) an eminently qualified

lawyer, certified Public Accountant and Tax Court practitioner willing to serve without compensation as accounting consultant in a deserving case; and (3) a possible source of funds available as compensation for an accountant willing to serve. The total elapsed time in the aforesaid canvass was approximately one hour." It is possible that these sources might prove to be unavailable in the particular context of the instant case, but the Corporation should at least have shown some bona fide effort to obtain relief by such less drastic and more conventional means, if indeed it required these services. I have already stated that these services will be available to the Corporation through the individual defendants.

**560**

crete terms. Although its precise content has changed as our concepts of the essentials of fundamental rights have advanced, that content has always been molded to meet the actualities of each situation where the protection of due process has been invoked. Using this realistic test, and giving due process its most generous scope, I find no danger of its denial here. Motion denied. So ordered.