Kay Martin SUMMERS, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 15451.

United States Court of Appeals
Ninth Circuit.

Dec. 5, 1957.

Walter M. Oros, Myron E. Anderson, Boise, Idaho, for appellant.

Ben Peterson, U. S. Atty., Boise, Idaho, Charles K. Rice, Asst. Atty. Gen., John J. McGarvey, Joseph M. Howard, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before DENMAN, BONE, and POPE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the District Court wherein Kay Martin Summers was adjudged guilty upon a jury trial on each of four counts of the indictment. The first three counts of the indictment charged appellant with violation of Section 145(b) of the Internal Revenue Code, (1939) 26 U.S.C.A. § 145 (b), for filing false and fraudulent income tax returns for each of the years 1950, 1951 and 1952. The fourth count charged her with knowingly and wilfully making a material false and fraudulent statement and representation to the Internal Revenue Service in violation of 18 U.S.C.A. § 1001. Appellant was sentenced to nine months in prison on each count, sentences to run concurrently, and a fine of $1000 on each count.

The method of proof employed rested on the "net worth" theory. To support its case, the Government introduced evidence tending to show the amount of visible assets of the appellant at the beginning and end of each of the years in question, and showing the increase of such assets to be substantially in excess of the amount of income claimed by appellant in her tax returns for the respective years. The Government also introduced certain other evidence tending to show that appellant's share as an operator of a house of prostitution was in excess of $200 per week for each of the girls practicing the trade in her house, and that for most of the period in question, from one to three girls were employed as prostitutes in her establishment.

Appellant's defense to this evidence was a claim that she possessed an immense cash hoard prior to the beginning of the tax periods in question which hoard had not been included in the Government's opening statement of assets, and the expenditure of which she claimed accounted for the apparent increase in her net worth.

Two years prior to bringing the instant indictment, the Government had commenced civil proceedings against appellant by filing a jeopardy assessment against all the assets of appellant thereby preventing her from using her available funds in any manner she desired. Appellant brought an action in the Tax Court for redetermination of her tax liability, but before this action came to trial, the Government moved for and was granted a continuance in this Tax Court action until such time as the instant criminal action could be concluded.

Appellant's principal contentions are that she was not accorded a fair and impartial trial because:

1. She was deprived of effective assistance of counsel in violation of Amendments Five and Six of the United States Constitution as a result of the Government's jeopardy assessment.

2. The jury was improperly impaneled.

3. The trial court was unduly restrictive in the cross-examination of Government witnesses, and was openly and vociferously prejudicial to the defendant's case.

4. The trial court erroneously admitted into evidence many items of both oral testimony and written exhibits.

These matters will be taken up in order.

■ Appellant's first contention is that in any criminal proceeding for income tax fraud in which the prosecution

is based on the so-called "net worth system" an accountant is a necessary adjunct to a properly conducted defense; that without the aid of an accountant the defendant in such a case is without *effective assistance of counsel.* This Court cannot agree with this contention.

The Constitution provides "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." U. S.Const. Amend. 6. In the leading case of Johnson v. Zerbst, 304 U.S. 458, at page 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, the Supreme Court in discussing this portion of the Constitution said:

> "The purpose of the constitutional guaranty of *a right to counsel* is to protect an accused from conviction resulting from his own ignorance of his *legal* and *constitutional* rights, * * *." (Emphasis supplied.)

Similarly in Von Moltke v. Gillies, 332 U.S. 708, at page 725, 68 S.Ct. 316, 324, 92 L.Ed. 309, Justice Black speaking for the Court found:

> "The right to counsel guaranteed by the Constitution contemplates the services of *an attorney* devoted solely to the interests of his client." (Emphasis supplied.)[1]

It is apparent that the "counsel" referred to by the Sixth Amendment has always been construed to refer solely to *legal* counsel and not to non-lawyers whose services might be useful under any particular set of facts. Appellant attempts to circumvent this situation by claiming that in the case at bar, even though having the assistance of competent legal counsel, her legal counsel was *ineffective* due to the lack of a lay expert in the field of accounting as a consequence of which she was deprived of her rights under the Sixth Amendment for lack of "effective" counsel as required by the case of Powell v. Alabama, 287 U. S. 45, 53 S.Ct. 55, 77 L.Ed. 158. In support of this contention, appellant could

give no suggestions as to *what* an accountant could possibly have *done* in order to aid her case.

We do not here decide, nor purport to decide, whether an accountant is *ever* a necessary adjunct to the provision of effective *legal counsel* for a defendant prosecuted for income tax violations under the net worth theory. We merely conclude that an accountant retained by a defendant in such a criminal case is *not always* necessary to provide the defendant with "effective legal counsel," (as required by the Sixth Amendment). If the rule were otherwise, it might be equally appropriate to argue that other types of lay experts *were necessary under the Sixth Amendment* in order to insure "effective legal counsel" in various other kinds of criminal prosecutions. As we understand appellant's contention on this appeal, "experts" would have to be provided to all indigent persons under prosecution regardless of any showing of a real need for their services. We cannot agree with this theory, if it be her theory.

In this connection, it is important to note that one of appellant's attorneys, Myron E. Anderson, who has been representing her continuously for a number of years in all her dealings with the Internal Revenue Service, and who represented her during the trial of this case, had been employed, prior to entering private practice, by the Internal Revenue Service for twenty years; that during his employment with this Service he held many positions requiring great accounting knowledge in the federal tax area, and he was advanced from the position of Deputy Collector to Head, Income Tax Division; that while attending the University of Idaho accounting was Anderson's "major," and since leaving that University, he has completed numerous courses in accounting and income tax law. It can hardly be said that a person so equipped with technical knowledge was not familiar with the intricacies of income tax

---

1. See also Willis v. Hunter, 10 Cir., 166 F.2d 721, 723, " * * * assistance of counsel contemplates the guiding hand of an able and responsible lawyer * * *". Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680.

accounting. Even with legal counsel enjoying this wide experience in income tax work, appellant was unable to demonstrate wherein a lay accountant would have been of benefit to a counsel so well qualified as Mr. Anderson.

■ Indeed, her defense is not one which requires great accounting knowledge since the basis of her claim is that there was an improper opening valuation placed by the Government on her "net worth" which she says was caused by the *existence of the above mentioned cash hoard* unknown to the Government. Whether or not the "cash hoard" claimed by appellant was actually in existence *and* in her possession at a time *prior* to the tax years here involved, presented a simple question of fact to be resolved by the jury, as it was in this case. It was an isolated fact wholly unrelated to accounting records which might be considered necessary in order to ascertain appellant's income and expenditures during the tax years here involved.

This is not the first time the suggestion has been advanced that an accountant is a necessary part of "effective assistance of counsel" in a so-called "net worth case." In two earlier cases [2] this contention has been raised but the courts have found the timing of the defendants to be wrong. In the O'Connor case [2] the court found that the defendant had waited too long before making his motion and that he failed to make an adequate showing that he was embarrassed by the jeopardy assessment. The court in that case (at page 303) also noted that the defendant made no showing *"that he would or could have made any other defense than he did* present, if the assessment had not been levied."

The Brodson case [2] was decided upon the ground that the trial court could not determine whether an accountant was necessary to an effective defense until the case was tried, but in discussing the contention concerning the necessity of an accountant, the court said, at page 109:

> "Whether defendant is correct in his contention that the constitution requires that one indicted for income tax evasion is entitled to the services of an accountant to assist his attorney in a case where the government intends to rely upon the net worth theory, we do not now decide. However, we think it is obvious that there is no such requirement invariably and as a matter of law in every such case."

In the case at bar, appellant did not show wherein she could have presented a different defense if she had had the services of a lay expert in accounting as well as the services of a lawyer skilled in both the law and in accounting, and this Court is not convinced by her argument to the effect that use of the "net worth" theory of prosecution creates a situation wholly different from that in any other type of prosecution, and for this reason requires a lay expert by its very nature.

Appellant's second contention is to the effect that she was deprived of a fair and impartial trial because the jury was improperly impaneled in that the box containing the names of the prospective jurors was without a lid and the names of the said jurors were on slips of paper which were not folded so that the Clerk of the court, his Deputy, and anyone else in the immediate vicinity of the box could read some of the names prior to their being drawn from the box. In support of this contention, appellant cites the Idaho Code sections applicable to the *selection* of jurors in trials in that State.

■ The applicable section of the United States Code is Section 1864 of Title 28, which reads "The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons * * *." There is no requirement in this section or elsewhere in the code that procedures required in the *state courts*

**2.** O'Connor v. United States, 4 Cir., 203 F.2d 301; United States v. Brodson, 7 Cir., 241 F.2d 107.

for the *selection* of jurors shall be used by Federal District Courts. And there is no contention that any Rule of the United States District Court for the District of Idaho, Southern Division, was violated in the mode of selection of jurors in this case. As early as 1894 the Supreme Court indicated that procedures and methods used in actual *selection* were separate and distinct from *qualification*, and that the District Courts were not bound by the state court mode and/or procedures of *selection*. Pointer v. United States, 151 U.S. 396, 406, 407, 14 S.Ct. 410, 38 L.Ed. 208.

■ In addition, it should be noted that though the evidence submitted on the point indicated that some of the names in the box could have been read by the Clerk of the Court and his Deputy, there was no evidence that anyone *did read* any names prior to drawing them from the box, or that there was anyone else *who could have read* those names. Further, during the impaneling of this jury, all the names available in the box were used before a jury was finally impaneled. We cannot see how the fact that some of the names were in fact visible to the Clerk and his Deputy could, under these circumstances, have prejudiced appellant's case in any fashion.

■ The third contention of appellant is that the trial judge made numerous remarks prejudicial to her cause and unduly limited cross-examination of the Government witnesses. We find no merit in this contention. The extent of cross-examination rests in the sound discretion of the trial court. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. We can find no abuse in the exercise of that discretion.

The trial judge did make some pointed comments during the trial which appel-

lant argues indicated a prejudice against her. But from the whole record we cannot conclude that the comments from the bench caused the jury to so far disregard its duty to follow instructions of the court as to taint or impeach its verdict. Furthermore, the court's comments were made the subject of a very specific and blunt instruction set out in the margin.[3]

■ Appellant's fourth contention is that numerous items of evidence, both oral and written, were improperly admitted in evidence by the trial court in that (1) no corpus delicti was established prior to the admission of other evidence, (2) a voluminous number of documents and other items of evidence were admitted without regard to any sequence of events, (3) an agent of the Internal Revenue Service was allowed to testify at length concerning an *investigation* of appellant's claim of receiving a gift of money prior to the tax years involved in this prosecution.

In Smith v. United States, 348 U.S. 147, 154, 75 S.Ct. 194, 198, 99 L.Ed. 192, the court said:

"* * * in a crime such as tax evasion there is no tangible injury which can be isolated as a *corpus delicti*. As to this crime, it cannot be shown that the crime has been committed without identifying the accused."

In discussing the order of presenting of evidence to establish the corpus delicti, this Court has said:

"The order in which evidence to prove the corpus delicti is to be received is not important and is largely a matter within the discretion of the trial court. * * * It is sufficient if it is forthcoming at some point in the trial." Adolfson v. United States, 9 Cir., 159 F.2d 883, 888, certiorari denied 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836.

3. "If the Court has inferred, or if you have gathered during the trial of the case that the Court has some opinion as to the facts in this case you will disregard that entirely. The matter of the guilt or innocence of the defendant as based on the facts presented to you here is a matter for your determination and yours alone, and the Court has not intended to infer at any time that he has any feeling on that matter."

Appellant's argument concerning admission of evidence by the Government reaches further. Her objection goes to the order in which practically all of the Government's evidence was introduced and admitted. There is no merit in this argument. The order in which evidence is admitted is within the discretion of the trial court. Parente v. United States, 9 Cir., 249 F.2d 752; United States v. Sansone, 2 Cir., 231 F.2d 887, 893, certiorari denied 351 U.S. 987, 76 S. Ct. 1055, 100 L.Ed. 1500; United States v. Pugliese, 2 Cir., 153 F.2d 497, 500. Though the Government's evidence was not submitted in a fashion to show the yearly sequence of events, the record provides no reason to conclude that the order in which evidence of these events was admitted, was, in itself, so confusing that the jury was misled in its efforts to allocate evidence between the respective years in determining whether she had had substantially more income in each of the tax years than she reported, for such years.

The difficulties inherent in proving the Government's case in prosecutions of this type, involving as they frequently do the production of a great many small items of evidence, do not readily permit application of a strict rule regarding the sequence in which particular facts are brought before a jury by evidence both oral and documentary.

Nor do we regard the admission of Mr. Stark's testimony as error. Though some matters testified to by Mr. Stark might conceivably have been excluded as hearsay, the same matters were subsequently covered by the testimony of another Government witness who had investigated the "leads" supplied by appellant. In order to establish the fact that the Government had investigated the "leads" furnished by appellant, Mr. Stark came into the case because he was in charge of the investigation of these leads. We think that this fact made him a proper witness as to the various steps taken in this Government investigation. The facts concerning this particular investigation were before the jury for its consideration and appraisal.

After a thorough search of the record, including those items pertaining to the bill of particulars and the instructions of the court, we can find no merit in appellant's other specifications of error and therefore must, and do, affirm the judgment of the lower court.