**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRANK KENNETH WORTH, AKA Frank Worth, AKA Frank K. Worth; HELEN LAURA WORTH, AKA Helen Worth, AKA Helen L. Worth,<br><br>   Petitioners-Appellants,<br><br> v.<br><br>COMMISSIONER OF INTERNAL REVENUE,<br><br>   Respondent-Appellee. | No. 15-70665<br><br>Tax Ct. No. 12573-09<br><br>MEMORANDUM[*] |
| FRANK KENNETH WORTH, AKA Frank Worth, AKA Frank K. Worth,<br><br>   Petitioner-Appellant,<br><br> v.<br><br>COMMISSIONER OF INTERNAL REVENUE,<br><br>   Respondent-Appellee. | No. 15-70668<br><br>Tax Ct. No. 12808-09 |

---

  [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeals from a Decision of the United States Tax Court

Argued and Submitted December 6, 2016
Pasadena, California

Before:     REINHARDT, TASHIMA, and PAEZ, Circuit Judges.

Frank and Helen Worth (together, "Taxpayers") appeal from the United States Tax Court's determination of their tax liabilities.  We have jurisdiction under 26 U.S.C. § 7482(a)(1), and we affirm.

In 2007, Frank Worth pled guilty to willfully making and subscribing to a false tax return for the year 2000 in violation of 26 U.S.C. § 7206(1).  In his plea agreement, he admitted that he had underreported his income from White Sands, a chain of retail shops that he co-owned with his parents, in the years 1998, 1999, and 2000.

In 2009, the government initiated the process of recovering unpaid taxes from Taxpayers serving them with Notices of Deficiency.  The Notices set forth their tax deficiencies as calculated by Internal Revenue Service Agent Helen Chan. Agent Chan had used the net worth method, an indirect method of reconstructing unreported income used when reliable records are unavailable, and the dash method, an assumption that cash levels remained constant over the period under examination.

Taxpayers petitioned the Tax Court for redetermination of their deficiencies. Prior to trial, they filed a motion *in limine* to preclude Agent Chan from testifying as an expert witness. The Tax Court denied the motion on the ground that Agent Chan could testify as a "lay witness[]" regarding the "details of the methodology [she] employed to determine unreported income (but not the validity of said methodology)." Agent Chan then testified at trial as to how she used the net worth method to calculate Taxpayers' tax deficiencies. Accepting Agent Chan's calculations, the Tax Court found Taxpayers collectively liable for $214,120 in unpaid taxes. The Tax Court also found Frank Worth individually liable for an additional $73,403 in unpaid taxes and $215,642.25 in fraud penalties. Taxpayers now timely appeal those determinations.

"We review decisions of the Tax Court on the same basis as decisions in civil bench trials in district court." *Shea Homes, Inc. & Subsidiaries v. Comm'r*, 834 F.3d 1061, 1066 (9th Cir. 2016) (quoting *Estate of Ashman v. Comm'r*, 231 F.3d 541, 542 (9th Cir. 2000) (internal quotation marks omitted)). We review rulings on motions *in limine* for abuse of discretion. *United States v. Alvirez*, 831 F.3d 1115, 1120 (9th Cir. 2016). "[W]e review findings of fact for clear error." *Shea Homes*, 834 F.3d at 1066.

**1.** Taxpayers first argue that because Agent Chan's testimony was based on her specialized knowledge of accounting, the Tax Court erred in allowing her to testify without requiring the government to disclose her as an expert witness. *See* Fed. R. Evid. 702; Fed. R. Evid. 701(c) (prohibiting a non-expert witness from testifying "based on scientific, technical, or other specialized knowledge").

Even assuming, however, that Agent Chan's testimony was expert opinion, the argument fails because Taxpayers have not shown prejudice. Admission of expert testimony that was not disclosed as such is harmless error, where the witness was "qualified to deliver the opinion testimony" and the opposing party does not demonstrate "how or why the [outcome] would have been different if he had been given notice" of the witness' testimony. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997). Taxpayers do not dispute that Agent Chan's education and experience qualified her to apply the net worth method. Nor have they shown that her methodology was unreliable, identified any flaws in her calculations that were overlooked at trial, or otherwise demonstrated that disclosing her as an expert could have made a difference to the outcome of their case.

**2.** Taxpayers also argue that the Tax Court erred in accepting Agent Chan's calculations because those calculations failed to account for cash that they had in their possession at the end of 1997.

In calculating a tax deficiency using the net worth method, the Commissioner must establish "with reasonable certainty" a taxpayer's opening net worth, which is his or her net worth at the beginning of the time period under review. *United States v. Greene*, 698 F.2d 1364, 1372 (9th Cir. 1983). If, as of that time, the taxpayer had "substantial cash on hand" that was not accounted for in the calculations, the net worth method may yield an overestimate of the taxpayer's unreported income because "the net worth increase shown by the Government[]" and attributed to unreported income "is in reality not an increase at all." *Holland v. United States*, 348 U.S. 121, 127 (1954).

Taxpayers claim that at the end of 1997, which is the beginning of the time period under review, they were holding a hoard of excess cash comprised of funds from White Sands' operations. The Tax Court found there was no such cash hoard and concluded that Agent Chan's opening net worth figure had been proven to a reasonable certainty. Whether "the 'cash hoard' claimed by appellant[s] was actually in existence . . . present[s] a simple question of fact" reviewed for clear error. *See Summers v. United States*, 250 F.2d 132, 135 (9th Cir. 1957). The Tax

5

Court's finding that there was no cash hoard was not clearly erroneous. The only evidence in support of the existence of the alleged hoard was Frank Worth's testimony, which the Tax Court did not find credible and was not required to accept. *See Greene*, 698 F.2d at 1372.

Taxpayers further argue that the Commissioner's estimate of their opening net worth was not reasonable, because White Sands undisputedly had some amount of cash on hand for operations at the end of 1997, which Agent Chan did not account for when she assumed "'zero' [as] the cash on hand data point" in applying the dash method. The dash method is not, however, an assumption that the taxpayer had no cash, but rather an assumption that the taxpayer's cash levels remained constant for the years under examination. *See* Internal Revenue Manual § 9.5.9.5.5.3. The fact that Taxpayers had some cash at the end of 1997 is not inconsistent with an assumption of constant cash levels in 1998, 1999, and 2000, and thus does not invalidate the use of the dash method. *See United States v. Giacalone*, 574 F.2d 328, 331 (6th Cir. 1978) (rejecting as "fallacious" an argument that the government failed to establish opening net worth "with 'reasonable certainty'" because the defendant had "prov[en] the existence of cash" but "no cash was shown" in the government's calculations due to its use of the dash method).

6

**AFFIRMED**.