**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Sidney A. BRODSON, Defendant.**
**Crim. U. No. 187.**

United States District Court
E. D. Wisconsin.

Nov. 30, 1955.

See also 132 F.Supp. 729.

Edward G. Minor, U. S. Atty., by Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

John L. Palmer, Whyte, Hirschboeck & Minahan, David E. Beckwith, Jr., Fairchild, Foley & Sammond, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This matter is before the Court on motions to dismiss the indictment on various grounds. The indictment contains three counts for alleged violations of Section 145(b) of the Internal Revenue Code, Title 26, United States Code of Laws, by filing false and fraudulent income tax returns for the calendar years 1948 (Count No. 1), 1949 (Count No. 2) and 1950 (Count No. 3). Conviction on all of these counts would subject the defendant to possible sentences totaling fifteen years imprisonment and fines totaling $30,000. The indictment was returned April 1, 1953.

There are three principal grounds urged for the dismissal of the indictment. The first is based upon a claim that the defendant cannot have a fair trial because of publicity in connection with Federal tax liens and other publicity. The second is that the defendant has been denied his constitutional right of a speedy trial. The third ground is that the defendant will be deprived of due process of law and a fair trial because all of his assets are impounded by the Federal Government and subject to tax liens. This is a net worth income tax case. Defendant claims he cannot properly defend himself without the services of an accountant, and that by depriving the defendant of all his assets he is deprived of the services of an accountant and unable to properly prepare for trial. Present counsel for the defendant are court appointed upon a claim and showing that defendant had no assets with which to procure counsel.

The Court is not impressed with the first claim. While there has been considerable publicity concerning the defendant and defendant's tax problems in the Milwaukee press, most of the publicity complained about and attached to the affidavit and motion of Mr. Lipton, defendant's prior counsel, was had at some considerable time in the past, articles being carried in 1951 and 1952. Most of any "prejudicial" effect has no doubt been effaced with the passage of time. Much of the publicity resulted from television appearances of the defendant before the Kefauver Committee some years back. There was nothing connected with such publicity that the Attorney General or District Attorney could have done anything about. Defendant was not indicted for gambling. The Court is con-

fident that any jury here would, under proper instruction, consider only the question of guilt or innocence of the offense charged. No motion was made by the defendant for a change of venue under Rule 21(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. or under the Criminal Code. Defendant and his previous counsel, whose affidavit shows that he is very experienced in this type of litigation, did not see fit to make a motion for change of venue under the rule. In the event of trial, defendant's rights would be carefully guarded in view of the past publicity.

■ With reference to the second ground, failure to afford a speedy trial, the record shows that defendant's motions for a speedy trial were all in connection with the civil case before the Tax Court. Those motions were resisted by the Government. There is absolutely nothing in the record in this case to show that the defendant at any time prior to the fall of 1955 either made any attempt to get a speedy trial of this case or made any objection to its being delayed. As late as March 29, 1954, the record shows the following in a transcript of proceedings before the Hon. Robert E. Tehan, Chief Judge of this Court:

> Mr. Hilgendorf (Assistant U. S. Attorney): "* * * I take it from counsel's statement that there will be no serious objection in this case up to this point that the defendant was not afforded a speedy trial to which he is entitled."

> Mr. Lipton (Defendant's then counsel): "I would have to agree with that statement. I certainly wouldn't on the basis of the record to the present date make any contention that the defendant wasn't afforded a speedy trial, and I have never made any requests of the United States Attorney or the District Court for an early trial, and I don't see—of course I couldn't preclude any further counsel, if any should appear in the case, from making any sort of objection, but I personally would not recommend or countenance any such motion."

The defendant wanted the civil case tried first probably to get a preview of the Government's case and the Government's witnesses. The Government did not want to try the civil case until after the criminal case had been tried, probably because it did not want to give the defendant the advantage of such preview. Defendant, by failing to take any action to try and get the criminal case on for trial, has, in the opinion of the Court, waived any such objection. To quote from two decisions on that subject from the Court of Appeals for the Seventh Circuit:

Worthington v. United States, 7 Cir., 1 F.2d 154:

> "The principal assignment of error is the ruling of the court in refusing to dismiss the defendants upon their plea, and sustaining plaintiff's demurrer thereto. The record fails to show a single effort made by defendant, or any other defendant, to avail himself of a speedy trial. No facts were pleaded bringing the case within the rule requiring a speedy trial; i. e., that the defendant was incarcerated, or, being enlarged, had appeared in open court demanding trial, or otherwise. Defendant's sole reliance was upon the bare fact that the case had not been prosecuted. If the defendant desired a speedy trial, it was his duty to ask for it, and we must assume that it would have been granted, had he made any effort to procure it. His long and uninterrupted acquiescence in the delay bars his right to complain. Phillips v. United States, 8 Cir., 201 F. [259] 262, 120 C.C.A. 149."

O'Brien v. United States, 7 Cir., 25 F.2d 90, 92:

> "It has been held that, where no demand for trial appears, one may not complain of delay in the trial, but will be held to have acquiesced in it."

The motion to dismiss because the defendant "was not afforded a speedy trial" is denied.

■■ The basis of the third ground, namely, that the defendant cannot get a fair trial, is that the Government, through jeopardy assessments and tax liens, has deprived the defendant of all assets since October, 1951. See 1939 Code, 26 U.S.C. §§ 273, 3670–3672. These jeopardy assessments and liens, under the statutes, attach to all property and assets which the defendant might otherwise have available to finance his defense.

This is a net worth tax case covering a three-year period. The District Attorney has at his command in preparation the records of the Tax Department and the service and advice of its expert employees and accountants. There is no dispute in the record but what the services of skilled accountants are necessary in order to adequately prepare the defense in this case. See affidavit of John L. Palmer of October 21, 1955. The arguments of defendant's present counsel, both written and oral, setting forth the fact that extensive accounting services are indispensable to the proper preparation of the defense of the case were at no time questioned by the Government, either by affidavits, by briefs, or that the Court can recall in any oral argument.

At the time of the oral argument the Court indicated that if defendant were, within one week, to file an extremely broad affidavit showing that he had no assets of any kind and none were procurable by him (an affidavit broad enough so that if it turned out to be false it could form the basis of a perjury conviction), and if the Government did not then see fit to put a reasonable amount of the seized assets in escrow with the Clerk of Court subject to order of the Court for use in reasonably necessary preparation for trial, this Court would be inclined to the view that defendant was being deprived of his constitutional rights to a fair trial and due process of law. The Court pointed out at that time that it had no power to direct defendant to file such an affidavit or to order the Government to make a reasonable amount of the defendant's former assets available for his defense, but expressed the tentative view that the failure of the Government under such circumstances to place in such escrow a reasonable amount would deprive defendant of his constitutional rights in this type of case. Defendant filed affidavits. The Government did not see fit to place any such funds in escrow with the Clerk as suggested.

Mr. Hilgendorf, Assistant United States Attorney, filed an affidavit on November 10, 1955, in which he sets forth that the receipts admitted in the defendant's affidavit exceeded the disbursements accounted for by some $51,000. The overwhelming amount of the receipts set forth were received prior to the indictment. On page 3 of that affidavit Mr. Hilgendorf lists receipts between December 31, 1950, and October 29, 1951, some two and a half years prior to the indictment. He concludes that over and above the assets seized under the jeopardy assessments the defendant had available to him over $128,000. None of these assets are shown to have been available to the defendant since the indictment. The amount of assets which the defendant may have had in 1950 and 1951 are not material to the question as to whether he can get a fair trial now. The indictment was not returned until April, 1953.

The affidavit of Mr. Reisimer, District Director of Internal Revenue, indicates that the Government has collected and applied to the tax accounts the sum in excess of $78,000 and lists further property which his office still has in its possession which were assets of the defendant or his wife. Nowhere in these affidavits is there any indication that the defendant now has any funds with which to prepare his defense nor do they indicate that he has had any substantial assets which have been dissipated since the filing of the indictment.

The question here presented is whether the defendant can get a fair trial or will be deprived of "due process" as guaranteed by the Constitution. What he did with assets prior to his indictment is immaterial. Under the Code cited above, the amount assessed has become a lien "in favor of the United States upon all property and rights to property, whether real or personal". Section 3670, 1939 Code, 26 U.S.C. The lien even attaches to property which is acquired after the lien has arisen. Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56. It attaches to bank deposits, claims for wages or services rendered, actions for breach of contract and interests held in trust. Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 114 F.2d 380, 383; United States v. Barndollar & Crosbie, 10 Cir., 166 F.2d 793, 794; Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311; United States v. Dallas National Bank, 5 Cir., 152 F.2d 582; United States v. Canfield, D.C., 29 F.Supp. 734; Mercantile Trust Co. v. Hofferbert, D.C., 58 F.Supp. 701. Under Section 3671 the lien continues in effect until the tax liability "is satisfied or becomes unenforceable by reason of lapse of time."

If one were to assume in this case that the defendant would receive a gift of cash from a friend or relative and tendered that to an accountant as a retainer for assisting in the defense, it is at once apparent to the accountant that the money tendered is impressed with a lien in favor of the United States. If the accountant defied the provision of the Code and accepted the tender, he would be required to surrender the property to the Government on command, and if he refused, he would be personally liable. Section 3710(b).

The United States Supreme Court on December 6, 1954, handed down four decisions which analyze in detail the various elements inherent in the net worth type of tax case. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127; Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194; United States v. Calderon, 1954, 348 U.S. 160, 75 S.Ct. 186; Friedberg v. United States, 1954, 348 U.S. 142, 75 S.Ct. 138. In the Holland case the court lists six dangers which must be conscientiously kept in mind in order to assure adequate appraisal of specific facts in net worth cases. Several of these dangers are interwoven with accounting data and concepts as well as legal problems. The court there stated [348 U.S. 121, 75 S.Ct. 132]:

"Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. * * *"

The court also stated as follows:

"We concluded that the method involved something more than the ordinary use of circumstantial evidence in the usual criminal case. Its bearing, therefore, on the *safeguards traditionally provided in the administration of criminal justice* called for a consideration of the entire theory."

"Nevertheless, *careful study indicates that it is so fraught with danger for the innocent that the courts must closely scrutinize its use.*"

"While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint." (Emphasis supplied.)

The defendant could not, in the Court's opinion, effectively refute the Government's evidence without the extensive assistance of a trained accountant.

Under the guidance of the United States Supreme Court, the Federal Courts have, particularly in recent years, consistently increased protections afforded to a defendant in a criminal case. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. Here we have one branch of the Government, the Tax Department, seizing all of the assets

of defendant. About eighteen months later he is indicted on these criminal charges which the Department of Justice now seeks to prosecute. Another department of the Government has deprived the defendant of the means to employ an accountant or accountants to assist in the preparation of the case and in the analysis of the Government's accounting at the trial. Both the Tax Department and the Department of Justice are arms of the same government. The Courts would not permit a private corporation to avoid responsibility by the position that the action taken by one department could not be controlled by or had nothing to do with the conduct of another department. A referee in a boxing match who was not blind would not permit "holding and hitting." Here the Tax Department is holding defendant's assets. As a practical matter it prevents him from acquiring other assets if he could do so. Possibly it will be established that these assets are actually owed to the Government for taxes. Nevertheless, while the Government is holding those assets, to require the defendant to stand trial on a criminal charge such as this where accounting services are so obviously necessary comes very close to the same ethics or standards as "holding and hitting."

Mr. Justice Frankfurter stated in Rochin v. People of California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183:

"Regard for the requirements of the Due Process Clause 'inescapably *imposes upon this Court an exercise of judgment* upon the whole course of the proceedings (resulting in a conviction) *in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.*' Malinski v. People of State of New York, supra, 324 U.S. [401] at pages 416–417, 65 S.Ct. [781] at page 789 [89 L.Ed. 1029]. These standards of justice are not authoritatively formulated anywhere as though they were specifics. Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental', Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, or are 'implicit in the concept of ordered liberty'. Palko v. State of Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288." (Emphasis supplied.)

And again at page 173 of 342 U.S., at page 210 of 72 S.Ct.:

"Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice.'"

The United States Supreme Court early stated in Wolf v. People of State of Colorado, 1948, 338 U.S. 25, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782:

"Due process of law thus conveys neither formal nor fixed nor narrow requirements. It is the compendious expression for all those rights which the courts must enforce because they are basic to our free society. But basic rights do not become petrified as of any one time, even though, as a matter of human experience, some may not too rhetorically be called eternal verities. *It is of the very nature of a free society to advance in its standards of what is deemed reasonable and right.* Representing as it does a living principle, due process is not confined within a permanent catalogue of what may at a given time be deemed the limits or the essentials of fundamental rights." (Emphasis supplied.)

And in 1909 in Moyer v. Peabody, 212 U.S. 78, 29 S.Ct. 235, 236, 53 L.Ed. 410, it stated:

"But it is familiar that what is due process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation."

The Hon. Herbert Brownell, Jr., the Attorney General of the United States, in an address reported in the American Bar Journal of June, 1955, after setting forth the safeguards to an accused, stated:

"By these provisions it was intended that justice shall prevail and that all people would stand on an equal footing before the law—the weak, the helpless, the poor, as well as the strong and powerful."

Also:

"In the area of criminal law, the existing system of assigning counsel to represent defendants without means falls far short of compliance with the spirit of the Sixth Amendment. Voluntary acceptance of assignments as defense counsel, without compensation, is as outmoded as a volunteer fire department in a modern society."

Net worth income tax prosecutions present new, difficult and complex problems. These must be met within the constitutional guarantees. Here, a defense counsel, assigned by the Court and without compensation, no matter how able, is not in a position to adequately defend without the assistance of an accountant. The Court has no power to appoint an accountant to serve without compensation. Without the assistance of an accountant the defendant is denied *effective* assistance of counsel. He does not have reasonable opportunity to defend such as is required in order to have a fair trial. The effective assistance right "cannot be discharged as though it were a mere procedural formality." Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 322, 92 L.Ed. 309. See also Foster v. People of State of Illinois, 332

U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955; Williams v. Kaiser, 323 U.S. 471, 65 S. Ct. 363, 89 L.Ed. 398; Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. As stated in Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158:

"* * * it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of *effective aid* in the preparation and trial of the case. To hold otherwise would be to ignore the fundamental postulate, already adverted to, 'that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' "

(Emphasis supplied.)

It is also stated in Avery v. State of Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377:

"But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

As stated by the United States Court of Appeals for the Seventh Circuit in United States v. Koplin, 227 F.2d 80.

" 'That Amendment (the Fourteenth) is violated also when a defendant is forced by a state to trial in such a way as to deprive him of the effective assistance of counsel.' Hawk v. Olson, 326 U.S. 271, 276, 66 S.Ct. 116, 119, 90 L.Ed. 61. 'The right to have the assistance of counsel is too fundamental and absolute

to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680."

Neither counsel has cited, nor has the Court been able to find, any decisions of the United States Supreme Court or of any of the Circuit Courts of Appeal passing upon this precise question. There is one case in which the Court of Appeals for the Fourth Circuit discussed the problem. That is the case of O'Connor v. United States, 1953, 203 F.2d 301. There defendant was indicted for false returns in 1944, 1945 and 1946. Trial was had October 13, 1952. Jeopardy assessments were levied August 8, 1952. The indictment was returned October 2, 1950, twenty-two months *prior* to levying assessments. During that time the defendant remained in full possession of his property.. The case had previously been set for trial April 8, but was put over at defendant's request for mental examination. The court held that during all the long period of time defendant had full opportunity to prepare his defense. He had the opportunity, after levying the assessment, to bring the circumstances to the attention of the court. This contention was not raised until the first day of the trial. No offer was then made to show defendant was embarrassed by the assessments in preparation of the trial of the case or that he could have made any other defense than he did if the assessment had not been levied. His own accountant was called as a government witness. The facts in the O'Connor case are so different than those here present with reference to the time element, the opportunity to prepare for trial, that the Court does not regard that case as controlling on the situation here presented.

It is very difficult to believe that here the situation does not deprive the defendant of *effective* counsel.

There has been one District Court decision on this question by Judge J. Sam Perry of the Northern District of Illinois, Eastern Division, in the case of Homan Manufacturing Co., Inc.·v. Ernest J. Sauber, District Director of Internal Revenue, and others, Civil Action No. 55–C–1541. That case presented the exact question here presented arising in a different manner. In that action the defendant in a criminal case started proceedings for an injunction to restrain the tax authorities from taking defendant's assets where a criminal action was pending. The District Director moved to dismiss and dissolve the temporary restraining order. The court continued a temporary restraining order with the provision that the plaintiff was granted leave to apply to the court for release of such funds as might be necessary to defend itself in the criminal and other tax proceedings and maintain its corporate existence. We quote from the transcript of the proceedings and portions of the oral opinion by Judge Perry:

"As far as I am concerned, in the present motion here, if it is admitted for the purpose of this motion only, it seems to me to be very clear cut, that the Government cannot be allowed under the circumstances here to come in and take all of the assets that the plaintiff has and leave it without any opportunity to defend its case in a case now pending in the courts. And a case involving so much, a tremendous amount of time and expense for briefs, for counsel's fees. To be perfectly frank with you, it seems to me—and I am just going to be perfectly frank—that the Government is seeking to win the case by an administrative proceeding which they are not too certain of winning in a court of law. That is the way it looks to me."

The defendant enters in the trial of this case with a presumption of innocence. Under the Constitution the defendant is entitled to due process of law and to a fair trial. It is the opinion of the Court that in this type of a case defendant cannot secure a fair trial without accounting assistance. He is being deprived of the right of effective counsel and of due process of law. This comes

about because of the action of an administrative department of the Government in seizing defendant's assets for tax liabilities and before those liabilities have even been adjudicated by the Tax Court or any other judicial body and its refusing to release a reasonable amount of such funds in escrow to the Clerk of this Court subject to the order of the Court in order that the defendant may have a reasonable opportunity to prepare and to defend himself in this criminal proceeding.

At times during the various oral arguments it has been estimated that it would take all the way from six to eight weeks to try this case. That is some indication as to its complications. The Government had asked for at least thirty days' notice before the case was called for trial stating that there were a considerable number of witnesses from out of Milwaukee who had to be contacted. It appears from the statements in the arguments and from some of the motion papers that defendant's principal source of income was from gambling and that he made various substantial wagers with persons in various parts of the country. If it is necessary for the Government to contact and arrange for the testimony of a considerable number of witnesses from without the district and from various parts of the country, then one can only assume that defendant likewise has such witnesses whom defendant's counsel should contact. Defendant's counsel point out that to have such witnesses subpoenaed at the Government's request requires disclosures which would give the Government a decided advantage over the defendant in the preparation of the case. These claims are additional to the claim that defendant cannot have effective counsel and effectively prepare without accounting services.

The Government has suggested that the Court can appoint an accountant as an expert under Rule 28 of the Federal Rules of Criminal Procedure and in that way defendant can have the services of an accountant. Rule 28 provides:

"The court may order the defendant or the government or both to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any, and may thereafter be called to testify by the court or by any party. He shall be subject to cross-examination by each party. The court may determine the reasonable compensation of such a witness and direct its payment out of such funds as may be provided by law. The parties also may call expert witnesses of their own selection."

Under this rule the witness so appointed "shall advise the parties of his findings". This would be tantamount to subjecting the defendant in a criminal case to discovery proceedings on behalf of the Government not contemplated by the law. If applied in this manner, grave constitutional questions would be raised as it would be tantamount to compelling the defendant to testify against himself. The Government has offered to waive that part of the rule which requires that the witness so appointed "shall" advise the parties of his findings. The provision in that respect is mandatory. The disbursing officer might well question this procedure, if not refuse payment, because the rule would not be followed. It is with considerable reluctance that the Court feels that this procedure would not be proper in this situation as if it could be applied it might go a long way toward solving the difficulty and provide defendant with the kind of a trial which is guaranteed him by the Constitution.

Defendant's counsel may prepare an order for dismissal of the indictment in accord with this opinion, submitting it to counsel for the Government for approval as to form only.