**UNITED STATES of America, Plaintiff,**

**v.**

**Sidney A. BRODSON, Defendant.**

**No. 11648.**

United States Court of Appeals
Seventh Circuit.
June 7, 1956.

[redacted]

See also D. C., 136 F.Supp. 158.

Edward G. Minor, U. S. Atty., Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., Charles K. Rice, Asst. Atty. Gen., Joseph M. Howard, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

John L. Palmer, David E. Beckwith, Milwaukee, Wis., for defendant.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

This is a criminal prosecution for alleged wilful attempted evasion of income tax for the years 1948, 1949 and 1950. The District Court dismissed the indictment before trial. The government appealed such dismissal to this Court. The question presently before us is defendant's motion that the appeal should be certified to the Supreme Court of the United States.

Title 18 U.S.C. § 3731 provides:

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section."

Said section further provides:

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances: * * * From the decision or judgment sustaining a mo-

tion in bar, when the defendant has not been put in jeopardy."

It is conceded that defendant herein has not been put in jeopardy. Whether we should certify the appeal to the Supreme Court of the United States depends upon whether the district court sustained "a motion in bar."

The order of the District Court was as follows:

"The defendant's motion of August 15, 1955, to dismiss the indictment upon the grounds that the initiation of a criminal prosecution for tax evasion during the pendency of a jeopardy assessment and accompanying liens deprives the defendant of liberty and property without due process of law, in violation of the Fifth Amendment to the United States Constitution, and to the effective assistance of counsel for his defense, in violation of the Sixth Amendment to the United States Constitution, be and it is hereby granted and the indictment be and it hereby is dismissed."

It will be noted from the wording of said order that the District Court recognized defendant's objection was to the initiation of a criminal prosecution "during the pendency of a jeopardy assessment." It was defendant's claim that as a result of the jeopardy assessment and tax liens he was without funds to defray the expenses of his defense and, in particular, to engage the services of an accountant to aid in meeting the government's proof as to net worth. The District Court held that the services of an accountant were essential to the effective assistance of counsel in this case.

■■ Whether a plea is in abatement or in bar depends upon its content and effect. United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290; United States v. Murdock, 284 U.S. 141, 52 S. Ct. 63, 76 L.Ed. 210. A plea in abatement sets forth facts extrinsic to the merits which affect only the manner in which the action is framed or the circumstances under which it is sought to be prosecuted. It does not destroy the right of action but merely suspends or postpones its prosecution.

■ A plea in bar, on the other hand, sets forth matters which *per se* destroy the right of action and bars its prosecution absolutely, such as the bar of the statute of limitations. United States v. Goldman, et al., 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862, or the constitutional guarantee against self-incrimination. United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210.

■ The motion before us sets up facts extrinsic to the merits of the charge, namely, that the prosecution of the indictment during the pendency of the jeopardy assessment and accompanying tax liens deprived defendant of his constitutional rights to effective assistance of counsel and a fair trial. Clearly the motion was addressed to the circumstances under which the government sought to prosecute the indictment. What the District Court's order did was to hold up or suspend the prosecution of the charges against Brodson until such time as the government would release sufficient funds so that he might prepare his defense. The fact that the writer of the brief which is before us indicates a view that authority did not exist to release any of the funds, and an Assistant United States Attorney communicated the same view to the District Court, surely is not the final word on that question.

Defendant argues that the statute of limitations has run in some instances during the pendency of the motion before us. Substantially the same argument was rejected in United States v. Storrs, 272 U.S. 652, 47 S.Ct. 221, 71 L.Ed. 460. In that case the defendant who was indicted for mail fraud filed a plea in abatement on the grounds of irregularities in the proceedings of the grand jury. The District Court sustained the plea and by the time the judgment was entered the statute of limitations had run. The United States brought writ of error to the Supreme Court claiming that under

the circumstances the plea was a special plea in bar. The appeal was dismissed, the court stating in 272 U.S. at page 654, 47 S.Ct. at page 221:

"  *   *   * The question is less what it (the plea) is called than what it is. But while the quality of an act depends upon its circumstances the quality of the plea depends upon its contents. As was said at the argument, it cannot be that a plea filed a week earlier is what it purports to be, and in its character is, but a week later becomes a plea in bar because of the extrinsic circumstance that the statute of limitations has run.  *   *   * If another indictment cannot be brought, that is not because of the judgment on the plea, but is an independent result of a fact having no relation to the plea and working equally whether there was a previous indictment or not.  *   *   *"

The defendant has not raised by motion any questions as to the statute of limitation. We can cross that bridge when we come to it. We hold the motion to certify the cause to the Supreme Court of the United States must be and is hereby denied.

FINNEGAN, Circuit Judge (dissenting).

Our jurisdiction is put in issue by Brodson's motion for certification to the Supreme Court of the United States. Section 1291, Judiciary and Judicial Procedure, 28 U.S.C., contains basic authority for review by courts of appeals from all decisions of the federal district courts "except where a direct review may be had in the Supreme Court."[1] Geared with that statutory exception are certain prescribed instances laid down in 18 U.S.C. § 3731 authorizing government appeals in criminal cases. See also Rule 37, Fed.Rules Criminal Procedure, as amended 18 U.S.C., Supp. II (1955). By force of § 3731, the United States is allowed a direct appeal from a decision of a district court to the Supreme Court when "a motion in bar" is sustained and "the defendant has not been put in jeopardy."

But there is absent any statutory definition of a motion in bar. Consequently the vital point before us concerns the nature of Brodson's motion to dismiss allowed below. Though there has been an express preservation of the government's right of direct appeal to the Supreme Court, nothing in the relevant legislative history bearing upon § 3831, sheds any light on the meaning of "a motion in bar." From the notes, 18 U.S.C. at page 2559 (1952 ed.), of the Advisory Committee on Rules it appears that the last sentence of Rule 54(c), Federal Rules of Criminal Procedure, 18 U.S.C., is intended to preserve the Government's right to appeal unaffected, despite the substitution "of a motion under Rule 12 for a demurrer, motion to quash and a special plea in bar." Thus, Rule 54(c) provides, in part: "The words 'demurrer,' 'motion to quash,' 'plea in abatement,' 'plea in bar,' and 'special plea in bar,' or words to the same effect, in any act of Congress shall be construed to mean the motion raising a defense or objection provided in Rule 12". 18 U.S.C. (1952 ed.). See also 4 Barron, Federal Practice and Procedure, Rules Edit. § 1981 (1951).

Rule 12(b) (1) and (2) abolished pleas to the jurisdiction, pleas in abatement, demurrers, special pleas in bar, and motions to quash. 18 U.S.C. at page 2532 (1952 ed.) Certain defenses and objections must be interposed before trial, others may be raised at any time. "Until this Rule was adopted, federal practice required that defendants raise defenses and objections as in the days of Blackstone  *   *   *" G. H. Dession, Criminal Law Administration and Public Order 906 (1948).

The district judge dismissed Brodson's indictment because, as shown by this record, the government had deprived him of his constitutional rights under the Fifth and Sixth Amendments. Since the

---

**1.** 65 Stat. 726.

prosecution refused, or asserted a lack of power, to release some funds stripped from Brodson under the jeopardy assessment, the trial judge refused to "require the defendant to stand trial on a criminal charge * * * where accounting services are so obviously necessary [that it] comes very close to the same ethics or standards as 'holding and hitting.'" United States v. Brodson, D.C.Wis.1955, 136 F.Supp. 158, 163. The brief for the United States, filed in opposition to Brodson's motion for a certification of this cause, contains this unqualified statement on page 2: "(T)he Government informed the court that *it was without authority in law to release any part of the assets subject to the tax liens * * *"* (Italics added.) That statement is quite consistent with the following passage contained in a letter from the United States Attorney to the district judge (T. R. 109):

"Please be advised that the government does not intend to file any additional affidavits or other proof in opposition to the motion for dismissal * * *

"We have also been advised by the Internal Revenue Service that there are no statutes or regulations thereunder authorizing the District Director of Internal Revenue to release funds in his possession to a defendant for employment of accountants or other expenses in connection with his defense in the criminal action * * *"

From that letter and other matters in this record it is clear to me this was scarcely an ephemeral stand nonchalantly assumed by the prosecution. My brothers are painting the circumstances prior to the ruling below when they say: "What the District Court's order did was to hold up or suspend the prosecution of the charges against Brodson until such time as the government *would release* sufficient funds so that he might prepare his defense." After the trial judge suggested that some funds should be released the government remained adamant. I would decide the narrow question immediately before us within the framework of the challenged ruling and refrain from speculation about the future. The die was cast upon dismissal of the indictment. Just as long as the District Court's judgment stands unreversed this specific indictment is effectively dismissed.

Major contours of the backdrop against which the ruling was made are fully described in the opinion filed below. D.C. Wis. 1955, 136 F.Supp. 158. After reading that reported decision and studying its underlying record I would avoid falling prey to the formalism which so long cluttered pleadings and procedure. I am unable to downgrade these constitutional questions to the defunct rank of pleas in abatement.

Yet viewing this appeal in its complete setting demonstrates the thrust of the judgment brought here for review. It is a so-called, "net-worth" case, typical of the prosecution's method of proof following in the wake of Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. *Effective* counsel for Brodson pivoted on his need for accounting services found indispensable to the preparation of his defense. 136 F.Supp. 158, 164. Incidentally, this situation bears no resemblance to prosecutions of indigent prisoners because here the sovereign action impoverished the defendant and paralyzed him financially.

It is abundantly clear that Rule 12 manifests an attempt to exorcise the technical demons so long plaguing lawyers who struggled over a selection between pleas in bar and pleas in abatement. Actually, the defense motion involves a novel point under the contemporary Rules of Criminal Procedure. For this reason I would decide Brodson's motion in a fashion consonant with modern theories of pleading and an awareness of the need to end the "contest" attitude found in criminal cases. The courageous view taken by the district judge reflects a philosophy of "fair play" in criminal prosecutions that ought not to be obscured in a morass of out-moded technicalities in pleading. At this juncture

we are only confronted with a jurisdictional question. When the financial strait-jacket was neither loosened nor removed, the prosecution was barred. The order appealed, and for which certification is sought, is bottomed on an interpretation of the Constitution, a matter typically meet for direct Supreme Court review.

Other parts of § 3731 authorize such direct appeals where district court action, dismissing an indictment, rests upon the invalidity or construction of a statute. Such matters are not apparent from the face of indictments.

Even if some of the acts charged under various counts in this particular indictment were still within the statute of limitations, a new indictment would not remove the constitutional obstacle to Brodson's prosecution. Parenthetically, at least, I note the last sentence of Rule 12: "Nothing in this rule shall be deemed to affect the provisions of any act of Congress relating to periods of limitations." That savings clause preserves the provisions of statutes permitting reindictment if the original indictment is found defective or dismissed for certain irregularities, and the statute of limitations has run. 18 U.S.C. §§ 3288, 3289 (1952 ed.). But none of these provisions aid the prosecution in Brodson's case. A new indictment charging the same offense would not be a curative here. Of course, the struggle to infuse the dismissed indictment with life is urgently necessitated by the running of the relevant statute of limitations. It was, however, Brodson's successful resort to organic law that terminated his prosecution and cancelled out his indictment.

A study of the transcript of record, revealing as it does the conscientious effort of the district judge to accord the accused his full constitutional rights, satisfied me that the prosecution was barred. The tenacles of a jeopardy assessment radiate in every direction until it is satisfied or becomes unenforceable by lapse of time, as the district court correctly pointed out, 136 F.Supp. 158, 162. For that reason the trial judge apparently appreciated and reported the dilemma and utter futility of the defendant's position. Antique pleading technicalities, confused even when in vogue, leave me unpersuaded that this modern streamlined motion could be anything but a bar at the time it was allowed. I would certify this appeal involving constitutional questions to the Supreme Court.