HUMAN ENGINEERING INSTITUTE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JOSEPH S. KOPAS AND MARY E. KOPAS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 528–68, 529–68. Filed October 18, 1973.

*James F. Sexton* and *Andrew Lelko*, for the petitioners.
*Buckley D. Sowards*, for the respondent.

### OPINION

TANNENWALD, *Judge:* The problem presented in this proceeding is rooted in jeopardy assessments, for which notice and demand was made on September 7, 1967, against the individual petitioners in the amount of $3,405,909.01 and the corporate petitioner in the amount of $1,271,053.24. In accordance with the provisions of section 6861(b),[1] respondent on November 3, 1967, issued notices of deficiency for the taxable years 1953 to 1962, inclusive, consisting of deficiencies in income tax of $1,780,852.38 and additions to tax for fraud of $890,426.21 in respect of the individual petitioners and of deficiencies in income tax of $663,228.80 and additions to tax for fraud of $331,614.43 in respect of the corporate petitioner. Petitions on behalf of both the individual and corporate petitioners were filed with this Court on January 29, 1968. At that time, petitioners were represented by counsel. Respondent's answers were filed on April 10, 1968, and petitioners' replies on May 20, 1968.[2]

On May 15, 1968, and November 1, 1968, the Court issued orders for trial status reports to counsel for the parties but received no reply from petitioners' counsel. On November 20, 1968, petitioners' original counsel was granted permission to withdraw from representation, new counsel having entered appearances on November 15, 1968. On May 7, 1969, October 23, 1969, April 1, 1970, July 31, 1970, and December 7, 1970, the Court issued further orders for trial status reports but no reply was received from petitioners' new counsel. On June 1, 1971, pursuant to notice to the parties served on March 11, 1971, the cases were called for report at a trial session of the Court in Cleveland,

---

[1] All references are to the Internal Revenue Code of 1954, as amended.
[2] An amended answer was filed by respondent in docket No. 529–68 on Jan. 5, 1970, to which a reply was filed on June 9, 1970.

Ohio. Respondent's counsel appeared and, upon the basis of his statement that an offer in compromise was pending in the district director's office, the cases were continued for report to the fall 1971 Cleveland, Ohio, session.

On June 3, 1971, the individual petitioners submitted an amended offer in compromise for the taxable years involved herein and proposed liability for the years 1964 through 1967. The offer was rejected on July 20, 1971, by the Chief, Collection Division. On August 4, 1971, petitioners' counsel requested that the offer in compromise be referred to the Appellate Division for review and hearing.

On September 13, 1971, pursuant to notice to the parties served on June 24, 1971, the cases were called for report at a trial session of the Court in Cleveland. Respondent's counsel appeared and again reported that the offer in compromise was pending. As a consequence, the Court, on October 5, 1971, ordered the parties to file a written status report on or before January 15, 1972. On December 7, 1971, the individual petitioners withdrew their offer.

On December 10, 1971, petitioners' new counsel filed a motion to withdraw on the ground that petitioners wanted to represent themselves, which motion was granted on January 19, 1972. On January 14, 1972, respondent filed a status report in compliance with the Court's order of October 5, 1971, which stated that petitioners "wish to represent themselves and to enter into discussions of the merits of these cases." On April 17, 1972, the Court issued another order for a trial status report, to which petitioners replied on July 5, 1972, stating that the cases could not be settled and would be ready for trial at the October 30, 1972, trial session of the Court scheduled for Cleveland. On July 31, 1972, petitioners' present counsel filed their notices of appearance with the Court.[3]

On July 31, 1972, petitioners' counsel filed a motion requesting that (1) the cases be set down for pretrial conference, (2) the cases be set down for separate hearing and trial on constitutional issues, (3) respondent be ordered to proceed by separate hearing and trial on the issue of fraud, (4) the cases be set down for separate hearing and trial in order to advance them for disposition, and (5) respondent be ordered to answer certain interrogatories. The foundations of this motion were the assertions that (a) the jeopardy assessments and the deficiency notices were the result of arbitrary and capricious action by the respondent in failing to give petitioners adequate notice and hearing and to conduct a proper investigation of the basis for asserting the taxes claimed to be due and (b) the petitioners were without funds

---

[3] The record indicates that such counsel had been involved in the cases since January 1972 and engaged in settlement negotiations with respondent in the interim period.

to pay adequate compensation to their counsel and, consequently, would be deprived of a fair hearing on the merits unless the respondent released assets to pay such compensation—all in violation of their constitutional rights. Petitioners also asserted that the Court had been remiss in its responsibilities by permitting a 5-year delay without trial after the filing of the pleadings. On October 4, 1972, the Chief Judge of the Court held a hearing which consisted entirely of oral statements and argument of counsel. At that time, the Chief Judge indicated a basic sympathy with the concept of a taxpayer who is faced with the necessity of going to trial and is without funds because all of his assets have been tied up by jeopardy assessments. But the Chief Judge indicated that he seemed precluded by the decided cases from acting favorably on petitioners' motion. He did, however, ask respondent to urge the district director to release a reasonable amount of funds to enable petitioners to pay counsel. When that path proved unproductive, the Chief Judge, on March 6, 1973, denied items 1, 2, 3, and 5 of petitioners' motion and directed the parties to notify the Court of alternative convenient trial dates. On May 17, 1973, the Court ordered the trial of the cases to be held at a special trial session in Cleveland, Ohio, commencing on September 10, 1973.

On July 23, 1973, respondent filed an extensive motion under Rule 31(b)(5) of the Rules of Practice of this Court which was made the subject of an order to show cause dated July 24, 1973, and returnable in Cleveland on September 10, 1973. On August 15, 1973, petitioners' counsel responded to that order to show cause by reasserting substantially the same claims which were the underpinning of the five-pronged motion previously described and denied. Thereafter, the Judge to whom the September 10, 1973, trial session had been assigned, by order dated August 31, 1973, after conferring in Cleveland on August 29, 1973, with counsel for both parties, scheduled a special hearing in Cleveland on September 11, 1973, in order to enable petitioners to present evidence in respect of their claims for the purpose of attempting to convince the Court to change its position and/or to establish a record in the event of an appeal. The hearing on the order to show cause in respect of respondent's motion under Rule 31(b)(5) and the trial of the cases were continued.

At the September 11, 1973, hearing, petitioners' counsel filed a motion for judgment on behalf of petitioners in the event that respondent failed to release assets necessary to pay the expense of a "proper trial and hearing" and for other alternative relief and repeated the arguments previously made to the Court (including the charge that this Court had been remiss in discharging its responsibilities). Evidence was received as to petitioners' financial capacity, as to the esti-

mated $300,000 legal and accounting fees [4] that petitioners claimed to be necessary for an adequate defense, as to assets which had been and were now subject to jeopardy assessments, as to releases which had already been made of those assets (including amounts for legal fees), and as to the amount of legal fees which the various counsel for petitioners had in fact already received. The Court also received proffers of testimony by petitioners as to the claimed arbitrary and capricious action of respondent in respect of the jeopardy assessments and the deficiency notices. We see no need to repeat that evidence in detail other than to note that it indicates that the district director has on several occasions released assets from the liens of the jeopardy assessments for various purposes beneficial to petitioners, including at least $16,500 for fees in respect of these cases and a related criminal proceeding against the individual petitioners; [5] that petitioners' second counsel received $23,000 for services in connection with the same matters; and that petitioners' present counsel have received between $10,000 and $15,000 since January 1972 for services rendered in connection with the instant cases (of which $1,500 was received during the period August 31 to September 4, 1973). During the course of the hearing, the trial judge voiced the same concept of sympathy as the Chief Judge had indicated previously, although towards the end of the hearing he indicated that such sympathy had been "diluted" by the evidence as to the fees already paid. At the conclusion of the hearing, the Court fixed September 24, 1973, for the filing of briefs.

It is against the foregoing background that we turn to a consideration of petitioners' contentions. At the outset, we reject the assertion that this Court has been remiss in discharging its responsibilities. The record herein speaks for itself and makes totally unnecessary any analysis of our reasons for this rejection. We are constrained to note, however, that we find it peculiar that petitioners seize upon the fact that the Court gave them a second bite at the apple through the September 11, 1973, hearing as indicative of the validity of their assertion. Such reverse-twist reasoning is, to put it mildly, hard to fathom.

A taxpayer who is faced with a trial of a claim against him by the Federal Government for alleged unpaid taxes and whose total assets have been subjected to a jeopardy assessment by that same Government, is in a difficult position. In such a situation, the judicial mind instinctively wonders how such a taxpayer can be protected in terms of the trial and about the extent to which his constitutional guaran-

---

[4] We express no opinion as to the validity of this figure.

[5] An indictment was filed on Apr. 7, 1967, charging the individual petitioners with several counts involving violations of sec. 7201 and sec. 7206. On Jan. 23, 1969, petitioner Joseph S. Kopas pleaded guilty to one count and was convicted of income tax evasion in respect of the taxable year 1961.

tees, particularly under the due process clause of the fifth amendment, are involved. That wonder is broadened where the taxpayer also asserts that the Commissioner of Internal Revenue has acted arbitrarily and capriciously in respect of the jeopardy assessment and/or the deficiency notices in violation of claimed constitutional rights. But, as it happens, the functioning of the judicial mind under such circumstances must take place within parameters already established by decided cases. In short, our approach to decision herein cannot be made on a *tabula rasa*, although we reject respondent's contention that this Court is without inherent power to rule on claims such as those made by the petitioners if we were to conclude that sustaining such claims was necessary to enable us properly to conduct the trial of the within cases.

The ability of a taxpayer successfully to attack a jeopardy assessment is severely restricted. Section 6861(a), pursuant to which the jeopardy assessments involved herein were made, is clearly constitutional. This was firmly established by *Phillips* v. *Commissioner*, 283 U.S. 589 (1931). See also *Trent* v. *United States*, 442 F. 2d 405 (C.A. 6, 1971). Petitioners' attempt to distinguish *Phillips* on the basis of procedural technicalities is without justification, as is their suggestion that the Supreme Court has changed its position. The cases which they cite, such as *Fuentes* v. *Shevin*, 407 U.S. 67 (1972); *Boddie* v. *Connecticut*, 401 U.S. 371 (1971); *Goldberg* v. *Kelly*, 397 U.S. 254 (1970); and *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337 (1969), do not in any way impair the fundamental holding of *Phillips* that the constitutional requirements are satisfied in respect of summary proceedings to enforce pecuniary obligations to the Government where "adequate opportunity is afforded for a *later* judicial determination of the legal rights." (Emphasis added.) See 283 U.S. at 595. Indeed, in *Fuentes* v. *Shevin*, *supra*, the Supreme Court specifically referred to the validity of "summary seizure of property to collect the internal revenue of the United States" and cited *Phillips* in support of that statement. See 407 U.S. at 91–92. See also *Board of Regents* v. *Roth*, 408 U.S. 564, 570 fn. 7 (1972); *Perez* v. *Ledesma*, 401 U.S. 82, 126–127 (1971). The petitioners' right to a trial de novo in this Court satisfies the later hearing requirement.

In the same vein, it is also well established that a court will not examine into the methods and reasons which underpin the making of a jeopardy assessment in a suit to enjoin the assessment and collection of a tax unless it is clear "that under no circumstances could the Government ultimately prevail" *and* that the "collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise." *Enochs* v. *Williams Packing Co.*, 370 U.S. 1, 6–7 (1962). See

also *Brown-Wheeler Co.*, 21 B.T.A. 755, 757 (1930). Even if we assume that the petitioners have met the latter requirement of *Enochs*, it is clear on the basis of the record herein that they cannot satisfy the former requirement.[6]

As far as the deficiency notice is concerned, it is equally well established that the courts will generally not look behind such a notice to determine whether respondent's agents followed the established administrative procedures in respect of investigation and according the petitioners a hearing. *Cleveland Trust Co.* v. *United States*, 421 F. 2d 475, 480–482 (C.A. 6, 1970); *Luhring* v. *Glotzbach*, 304 F. 2d 560 (C.A. 4, 1962); *Michael Pendola*, 50 T.C. 509, 511–514 (1968). A possible exception to this rule is where there is evidence of unconstitutional conduct on the part of respondent's agents. Cf. *Efrain T. Suarez*, 58 T.C. 792 (1972), where the deficiency notice was based exclusively on evidence obtained in violation of the fourth amendment and, in order to provide a deterrent to such unconstitutional action on the part of the Government, the "tainted" evidence was excluded and the burden of going forward with the evidence was shifted to respondent. To this may be added the further possibility that if, at a trial, it appears that the taxpayer has established that the respondent's determination is without foundation, he will be relieved of his burden of proof as to the amount of tax which may be due and that burden will be shifted to respondent. *Helvering* v. *Taylor*, 293 U.S. 507 (1935). Thus, even in those limited situations, the courts have refused to hold the deficiency notice null and void thereby relieving the taxpayer of any liability, as petitioners seek to have us do herein. See *Marx* v. *Commissioner*, 179 F. 2d 938 (C.A. 1, 1950); *Durkee* v. *Commissioner*, 162 F. 2d 184, 187 (C.A. 6, 1947). But, in the instant situation, we do not have evidence of such a character as to require the application of the distinctive rationale which motivated our decision in *Efrain T. Suarez, supra*. Nor are we convinced that the circumstances herein—at least insofar as they now appear—justify our acceptance of petitioners' alternative position that we should shift the burden of proof to respondent, although we reserve our right, particularly since additions to tax for fraud are involved, to determine that the initial burden of going forward with the evidence should be so shifted. See also p. 68 *infra*.

Finally, we must dispose of petitioners' contention that they are constitutionally entitled to have sufficient assets released from the liens

---

[6] On its face, the deficiency notice indicates a valid tax liability on the part of the petitioners, so that it cannot be said that the exaction is merely in "the guise of a tax." *Miller* v. *Nut Margarine Co.*, 284 U.S. 498, 509 (1932). See also *Enochs* v. *Williams Packing Co.*, 370 U.S. 1, 7 (1962). Moreover, at the Sept. 11, 1973, hearing, petitioners' counsel conceded that some tax was probably due, albeit he posited his concession on the ground of probable inability of the petitioners to carry their burden of proof due to lapse of time.

of the jeopardy assessments to enable them to compensate counsel. Here again the path to decision has been charted by prior cases. Initially, we note that the *right* to counsel in civil cases has been severely restricted, perhaps to the point of nonexistence. See *Peterson* v. *Nadler*, 452 F. 2d 754, 757 (C.A. 8, 1971); *Barker* v. *Hardway*, 283 F. Supp. 228, 237 (S.D. W. Va. 1968), affirmed per curiam 399 F. 2d 638 (C.A. 4, 1968), certiorari denied 394 U.S. 905 (1969); *Spears* v. *United States*, 266 F. Supp. 22, 25–27 (S.D. W. Va. 1967); *Suess* v. *Pugh*, 245 F. Supp. 661, 665 (N.D. W. Va. 1965). See also *Kaufman* v *Commissioner*, 451 F. 2d 175 (C.A. 4, 1971), affirming a Memorandum Opinion of this Court; Note, "The Indigent's Right to Counsel in Civil Cases," 76 Yale L. J. 545 (1967). We find no basis whatsoever in the decided cases for sustaining petitioners' contention that the judicial power must be exercised not only to guarantee them a right to counsel of their own choosing but also to assure that such counsel is adequately paid.

Nor does the fact that the petitioners herein seek payment of counsel fees from their own property, which has been subjected to jeopardy assessment, necessarily justify a decision herein favorable to petitioners.[7] Indeed, the decided cases which have focused on this type of situation have uniformly held that it would be premature for the courts to deal with the purported constitutional question in advance of trial, indicating clearly that the most that a taxpayer is entitled to is a *posttrial* determination as to whether he has been deprived of any constitutional right of representation that he may have. *Avco Delta Corporation Canada Ltd.* v. *United States*, 484 F. 2d 692 (C.A. 7, 1973); *Illinois Redi-Mix Corp.* v. *Coyle*, 360 F. 2d 848 (C.A. 7, 1966); *Lloyd* v. *Patterson*, 242 F. 2d 742 (C.A. 5, 1957); *United States* v. *Brodson*, 241 F. 2d 107 (C.A. 7, 1957), reversing 136 F. Supp. 158 (E. D. Wis. 1955).[8] The only case to the contrary is *Homan Manufacturing Co.* v. *Sauber*, an unreported case (N.D. Ill. 1955, 48 A.F.T.R. 1929, 1955–2 U.S.T.C. par. 9666), which was relied on by the District Court in *Brodson* to sustain its subsequently reversed decision (see 136 F. Supp. at 165).

Conceivably, there may be situations where remitting a taxpayer, all of whose assets have been subjected to a jeopardy assessment, to a posttrial determination of his rights will be an unsatisfactory solution and where some action by the trial judge may be indicated in order to avoid placing an undue burden on the court or to protect the integrity of the

---

[7] The mere fact that a jeopardy assessment renders a taxpayer indigent, in the sense of being deprived of funds to pay counsel fees, does not require a different conclusion. See *United States* v. *Brodson*, 241 F. 2d 107, 110–111 (C.A. 7, 1957).

[8] Indeed, the *Brodson* case involved the right to a release of assets in order to obtain representation in a criminal proceeding.

judicial process. See *Efrain T. Suarez*, 58 T.C. at 805. But we have no occasion, on the basis of the facts herein, to flesh out the circumstances where such action might be in order. In the instant case, there is legal representation and the record indicates that petitioners have been able to uncover outside resources, in the form of "loans" from relatives, to pay substantial counsel fees, including a fee paid only some 10 days before the September 11 hearing herein. See *United States* v. *Brodson*, 241 F. 2d at 109. Nor do we see any basis for shifting the burden of proof on the basic deficiency to the respondent in accordance with the alternative suggestion of petitioners, reserving, however, as we have previously indicated (see p. 66 *supra*), the question of shifting the location of the initial burden of going forward with the evidence.

The long and short of it is that the Court's original sympathy for the alleged plight of the petitioners herein has been so diluted that whatever impetus there may have been to seek a permissible path toward granting relief has disappeared.

In view of the foregoing, the Court has issued an order (1) reaffirming the denial of petitioners' motion filed on July 31, 1972, (2) denying petitioners' motion filed on September 11, 1973, and (3) directing petitioners to respond in writing to the order to show cause on respondent's motion under Rule 31($b$) (5) and setting a date for the purpose of hearing the parties in respect thereto.